### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHILIP C. PULLEY**, *et al.*, | : | |
| Plaintiffs, | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 20-6109** |
| | : | |
| **STERLING BANCORP**, *et al.*, | : | |
| Defendants. | : | |

<u>**MEMORANDUM**</u>

**Younge, J.**                                                                                                          **March 28, 2023**

### I.   INTRODUCTION

Currently before this Court are Defendant Sterling Bancorp and Sterling National Bank's Motion for Summary Judgment (ECF No. 61), Defendant Equifax Information Services, LLC's ("Equifax") Motion for Summary Judgment (ECF No. 64), Plaintiffs Philip C. Pulley and Devra K. Pulley's Partial Motion for Summary Judgment (ECF No. 65), Defendant Experian Information Solutions, Inc.'s ("Experian") Motion for Summary Judgment (ECF No. 69), and Defendant Trans Union LLC's ("Trans Union") Motion for Summary Judgment (ECF No. 70). The Court finds these motions appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f). For the reasons set forth in this Memorandum, Defendants' Motions (ECF Nos. 61, 64, 69-70) will be granted, and Plaintiffs' Motion (ECF No. 65) will be denied.

### II.  FACTUAL BACKGROUND

Plaintiffs Philip C. Pulley and Devra K. Pulley have filed this civil action against Defendants Sterling Bancorp and Sterling National Bank (hereinafter, the "Sterling Defendants") and the three major credit reporting agencies—Defendants Trans Union, Equifax, and Experian (hereinafter, the "CRA Defendants")—for alleged violations of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. §§ 1681, *et seq.* (Amended Complaint ("Am. Compl.), ¶ 1, ECF No. 5.)  In

June 2000, Plaintiffs and the Sterling Defendants executed a $600,000 adjustable-rate note and mortgage—with monthly payments totaling $5,174.27. (Am. Compl., ¶¶ 11-12, ECF No. 5; Sterling Defs., SUMF, ¶ 9, ECF No. 61-1.)  As of April 2020, Plaintiffs were current on their mortgage. (Am. Compl., ¶ 13, ECF No. 5.)  In May 2020, as a direct result of the COVID-19 pandemic, Plaintiffs entered into a Forbearance Agreement with the Sterling Defendants—whereby Plaintiffs were excused from making their monthly payments for the months of May, June, and July 2020. (Am. Compl., ¶ 14, ECF No. 5.)  However, on August 7, 2020, Plaintiffs filed a dispute with the CRA Defendants (as required by the FCRA) after the Sterling Defendants seemingly reported Plaintiffs' Sterling mortgage (the one subject to the three-month forbearance period) as delinquent and past due to the CRA Defendants. (Am. Compl., ¶¶ 20-21, ECF No. 5.)  At the summary judgment stage, only Defendant Trans Union concedes to receiving a formally filed dispute from Plaintiff Philip C. Pulley (but not from Plaintiff Devra K. Pulley); Defendants Experian and Equifax maintain that their records indicate that they never received a disputed claim from Plaintiffs. (Def. Trans Union, SUMF, ¶ 58, ECF No. 70-2; Def. Experian, SUMF, ¶¶ 25-27, ECF No. 69-2; Def. Equifax, SUMF, ¶¶ 77-80, ECF No. 64-2.)

The Sterling Defendants note that their sub-servicer, Dovenmuehle Mortgage, Inc. (hereinafter, "DMI")—*i.e.*, the entity that handles all the administrative tasks necessary to service a mortgage loan—had reported Plaintiffs' as having missed their May 2020, June 2020, and July 2020 monthly payments, which were covered by the aforementioned Forbearance Agreement. (Sterling Defs. Mem. of Law. in Supp. of Mot. for Summ. J., pp. 7, 9, ECF No. 61-2.)  However, the Sterling Defendants and Defendants Trans Union and Experian all agree that the alleged inaccuracy had been rectified by September 3, 2020—which is within the FCRA's requirement that a disputed claim be investigated and potentially resolved within thirty (30) days.  However,

Defendant Equifax has continued to maintain that it had no obligations or liability in connection with this civil action, as it had never marked Plaintiffs' Sterling mortgage as late or delinquent on Plaintiffs' consumer credit reports. (Def. Equifax, SUMF, ¶ 40, ECF No. 64-2.)

Taken together, the crux of the dispute revolves around whether the Sterling Defendants conducted a reasonable investigation and modification of Plaintiffs' Sterling mortgage details upon receipt of Plaintiff Philip C. Pulley's disputed claim from Defendant Trans Union as required by 15 U.S.C. §§ § 1681s-2(b)(1) and whether the CRA Defendants: (1) implemented reasonable procedures to ensure the maximum possible accuracy of the information submitted by the Sterling Defendants/DMI for inclusion in Plaintiffs' consumer credit reports under 15 U.S.C. § 1681e(b) and (2) whether the CRA Defendants' re-investigation and modification of Plaintiffs' consumer credit reports were reasonable and timely pursuant to 15 U.S.C. § 1681i.  Perhaps not too surprising, the Sterling Defendants and the CRA Defendants have each moved for summary judgment—arguing that nothing in the evidential record suggests that they were unreasonable or untimely in their investigations and resolution of the disputed inaccuracy within Plaintiffs' consumer credit reports (or, in Defendant Equifax's case, that no inaccuracy existed to begin with). On the other hand, Plaintiffs are seeking partial summary judgment against the Sterling Defendants—seeking a determination that the Sterling Defendants are liable, as a matter of law, for failing to modify Plaintiffs' consumer credit reports for nearly six (6) months. (Pls. Part. Mot. for Summ. J., pp. 22-25, ECF No. 65-1.)

### III.   LEGAL STANDARD

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012).  To defeat a motion for

summary judgment, there must be a factual dispute that is both material and genuine. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 24-49 (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id*.

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). When the movant is the defendant, they have the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.,* 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains their initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

IV. **DISCUSSION**

Plaintiffs allege that Defendants "are liable to Plaintiffs for violations of the FCRA and for willfully and negligently failing to comply with the requirements imposed on them by the provisions of the FCRA [referencing 15 U.S.C. §§ § 1681s-2(b)(1), 1681e(b), and 1681i]. (Am. Compl., ¶ 47, ECF No. 5.) As a threshold matter, it is important to note that "furnishers"—like the Sterling Defendants/DMI—are bound by 15 U.S.C. § 1681s-2(b)(1) (*i.e.,* conducting reasonable and timely investigations of disputed information that the furnishers previously submitted to credit reporting agencies). Additionally, consumer reporting agencies—like the CRA Defendants—are primarily bound by 15 U.S.C. § 1681e(b) (*i.e.,* implementing reasonable procedures for maximizing the possible accuracy of the information that furnishers ultimately incorporate into consumer credit reports) and 15 U.S.C. § 1681i (*i.e.,* informing furnishers of disputed information within consumer credit reports and conducting reasonable re-investigations that result in potential modifications to a given consumer credit report). Thus, this Court will review the claims against the Sterling Defendants and CRA Defendants in turn.

    a. **Sterling Defendants: 15 U.S.C. § 1681s-2(b) (Furnisher Obligations)**

As previously discussed, Plaintiffs allege that the Sterling Defendants "violated its duty under the FCRA [15 U.S.C. § 1681s-2(b)] to conduct a reasonable and good faith investigation into Plaintiffs' dispute and failing to correct or delete the inaccurate information." (Am. Compl., ¶¶ 39, 47, ECF No. 5.) For context, the Sterling Defendants' wholly-owned subsidiary, DMI, acts as a sub-servicer and as a "furnisher"—meaning that DMI is "an entity, often a creditor, that furnishes information regarding a consumer to one or more consumer reporting agencies for inclusion in a consumer report." *Harris v. Pennsylvania Higher Educ. Assistance Agency/Am. Educ. Servs.*, 696 F. App'x 87, 90 (3d Cir. 2017) (referencing 16 C.F.R. § 660.2(c)). Upon receipt

of a dispute regarding the completeness or accuracy of any information provided to a consumer reporting agency, a furnisher must: (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided by the consumer reporting agency; (3) report the results of the investigation to the consumer reporting agency within thirty (30) days; (4) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and (5) if an item of information disputed by a consumer is found to be inaccurate or incomplete, then the furnisher must modify, delete, or permanently block the information. 15 U.S.C. § 1681s-2(b)(1).

As the Eastern District instructs, "Section 1681s-2(b) of FCRA allows a consumer to sue a data furnisher if the furnisher provides 'incomplete or inaccurate' information to a CRA and then refuses to 'delete' or 'modify' that information in response to a consumer complaint." *Fernandez v. Great Lakes Educ. Loan Servs., Inc.*, No. CV 19-144, 2021 WL 3857864, at *3 (E.D. Pa. Aug. 30, 2021). However, "[f]urnishers of credit information to consumer reporting agencies cannot be sued by a consumer for reporting inaccurate information. They can only be sued for failing to conduct a reasonable investigation of a dispute regarding the accuracy of information furnished to and reported by a consumer reporting agency." *Scarbo v. Wisdom Fin.*, No. CV 20-5355, 2022 WL 309161, at *5 (E.D. Pa. Feb. 2, 2022), *aff'd*, No. 22-1398, 2022 WL 16829371 (3d Cir. Nov. 9, 2022); *see also Seamans v. Temple Univ.*, 744 F.3d 853, 864 (3d Cir. 2014) ("Section 1681o authorizes consumers to bring suit for damages caused by a furnisher's negligent breach of its duties to consumers under 15 U.S.C. § 1681s–2(b).")  Further, Plaintiffs carry "[t]he burden of showing the investigation was unreasonable." *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37 (1st Cir. 2010).  Finally, "whether an investigation is reasonable is ordinarily a question for a

6

jury; the Third Circuit has underscored that courts may decide 'reasonableness' as a matter of law only when 'the reasonableness or unreasonableness of the procedures is beyond question.'" *Coulter v. Chase Bank USA, N.A.*, No. CV 18-1538, 2020 WL 5820700, at *5 (E.D. Pa. Sept. 30, 2020) (quoting *Seamans*, 744 F.3d at 864–65).

Here, on August 12, 2020, the Sterling Defendants/DMI received Plaintiffs' dispute from Defendant Trans Union concerning the accuracy of the Sterling mortgage information that the Sterling Defendants/DMI had provided to the consumer reporting agency. (Sterling Defs., SUMF, ¶ 18, ECF No. 61-1.) On September 2, 2020, the Sterling Defendants/DMI uploaded their response to the e-OSCAR system—which automatically sent copies to each of the consumer reporting agencies. (Sterling Defs. Reply in Supp. of Mot. for Summ. J., p. 11 n.1, ECF No. 89.)  In their response, the Sterling Defendants/DMI "modified the reporting on Plaintiffs' [Sterling] Loan account in a way that eliminated the past due amount of $16,968 [*i.e.,* the three months of payments that were in forbearance] by changing that amount to zero, and deleting the delinquency notation for the May 2020 payment so that the report no longer reflected any delinquency and, instead, showed the loan to be current. In addition, DMI's modified reporting showed that the loan was 'paying as agreed.'" (Sterling Defs. Mot. for Summ. J, pp. 9-10, ECF No. 61-2; *see also* Sterling Defs., SUMF, ¶ 21, ECF No. 61-1.)  Defendants Trans Union and Experian have both independently confirmed receiving this information from the Sterling Defendants/DMI on September 2, 2020 and updating Plaintiffs' consumer reports to reflect the change as of September 3, 2020. (Def. Trans Union, SUMF, ¶¶ 13-14, ECF No. 70-2; Def. Experian, SUMF, ¶ 28, ECF No. 69-2.)  As a reminder, Defendant Equifax did not need to update its records, as it had never reported a late or delinquent payment on Plaintiffs' respective consumer report in connection with the Sterling mortgage. (Def. Equifax, SUMF, ¶ 40, ECF No. 64-2.)  Perhaps most telling, even

7

Plaintiffs in their own motion for partial summary judgment concede that "[t]he record indicates that TransUnion corrected the inaccuracies in Plaintiffs' consumer credit report as of September 3, 2020." (Pls. Mem. of Law in Supp. of Mot. for Summ. J, p. 22, ECF No. 65-1.)

Taken together, this Court concludes—as a matter of law—that it is "beyond question" that the Sterling Defendants/DMI satisfied the aforementioned requirements of 15 U.S.C. § 1681s-2(b)(1) by conducting a reasonable investigation and timely providing updated results of said investigation to the CRA Defendants via the e-OSCAR system—ultimately resulting in Defendants Trans Union and Experian subsequently modifying Plaintiffs' consumer credit report on September 3, 2020 (*i.e.,* all within thirty days). Plaintiffs have not proffered sufficient evidence to rebut the Sterling Defendants' timeline and sequence of events; instead, Plaintiffs seemingly offer notes of the Sterling Defendants/DMI's internal logs that do not appear to contradict Plaintiffs' own concession that, as of September 3, 2020, the inaccuracies were corrected on Plaintiffs' external-facing credit reports. Stated differently, Plaintiffs have not demonstrated that a genuine issue of material fact exists with respect to the reasonableness of the Sterling Defendants/DMI's investigation—thereby warranting dismissal of Plaintiffs' § 1681s-2(b) claim and the granting of the Sterling Defendants' motion for summary judgment. Having granted the Sterling Defendants' motion for summary judgment, this would necessarily mean that this Court is denying Plaintiffs' partial motion for summary judgment against the Sterling Defendants.

### b. **CRA Defendants: 15 U.S.C. § 1681e(b) (Reasonable Procedures)**

As noted above, Plaintiffs also allege two claims against the CRA Defendants. In this section, the focus will turn to Plaintiffs' first assertion that the CRA Defendants did not implement reasonable procedures to safeguard the alleged inaccurate information that had been included in Plaintiffs' consumer credit reports. The FCRA notes, in relevant part, that "[w]henever a consumer

reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).  As the Third Circuit instructs: "[n]egligent noncompliance with FCRA § 1681e(b) consists of four elements: '(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry.'" *Bibbs v. Trans Union LLC*, 43 F.4th 331, 342 (3d Cir. 2022) (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 708 (3d Cir. 2010)).  Relatedly, since Plaintiffs also allege *willful* violations of the FCRA, they must additionally show "that the defendant acted knowingly or with reckless disregard of the statute's terms." *Id.* at 342 n.16; *see also Seamans v. Temple Univ.*, 744 F.3d 853, 868 (3d Cir. 2014).

In assessing liability for consumer reporting agencies under § 1681e(b), the Eighth Circuit (in addition to other circuits) has persuasively highlighted how the inclusion of inaccurate information in a credit report "does not render consumer reporting agencies strictly liable for inaccuracies in a report. There must be a showing that the inaccuracy resulted from the agency's failure to 'follow reasonable procedures to assure maximum possible accuracy.'" *Hauser v. Equifax, Inc.*, 602 F.2d 811, 814–15 (8th Cir. 1979) (internal citation omitted).  Additionally, the Third Circuit determined "that the costs of requiring consumer reporting agencies to go beyond the original source of information as an initial matter [under 15 U.S.C. § 1681e(b)] outweigh any potential benefits of such a requirement. Thus, we can assume that absent any indication that the information is inaccurate, the statute does not mandate such an investigation." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 224–25 (3d Cir. 1997); *see also Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972 (7th Cir. 2004) ("The Commentary of the Federal Trade Commission to the FCRA,

16 C.F.R. pt. 600, app., section 607 at 3.A, states that the section does not hold a reporting agency responsible where an item of information, received from a source that it reasonably believes is reputable, turns out to be inaccurate unless the agency receives notice of systemic problems with its procedures.")  Finally, the Third Circuit has reiterated how "the reasonableness of a credit reporting agency's procedures is 'normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question.'" *Cortez v. Trans Union, LLC*, 617 F.3d 688, 709 (3d Cir. 2010) (quoting *Sarver*, 390 F.3d at 972).

In their respective briefs, the CRA Defendants outlined the practices, procedures, and protocols that they have each implemented to ensure that furnishers are providing accurate and reliable data:

> Trans Union has numerous and varied procedures and systems to ensure on an ongoing basis that its Furnishers are providing accurate information including: (a) [i]nitial site inspections of Furnishers when entering into a contractual relationship with them; (b) [i]nitial review of due diligence investigation information to make sure that a Furnisher is a creditworthy financial institution; (c) [d]istribution of relevant manuals to Furnishers or ensuring that they have access to such manuals; (d) [t]raining for Furnishers; (e) [a]udits of Furnisher data before and after they are permitted to transmit information; (f) [s]ystems which alert it of unusual numbers of complaints, or a higher than expected number of adverse items reported by Furnishers; (g) [i]nitial and thereafter monthly and yearly audits, monitoring and accuracy checks of the information Furnishers provide to make sure that the data provided is accurate; and (h) [w]hen Trans Union's procedures indicate a Furnisher is unreliable, the Furnisher's information is suppressed and removed from consumer reports until the information is corrected.

(Def. Trans Union, Donald Wagner Decl., ¶ 26, ECF No. 71.)

> Experian's entire business and existence as a CRA requires that it maintain reasonable procedures and make every effort to ensure the maximum possible accuracy of information that it assembles, stores, and reports. These procedures include: (1) working with furnishers to ensure that they supply the most complete and accurate data possible; (2) subjecting all incoming data to numerous systems and checks designed to prevent errors; (3) continually reviewing and refining Experian's computer systems in an ongoing effort to assure maximum possible accuracy of information that Experian reports; and (4) working with consumers to address concerns in their consumer credit report. Experian will only accept

10

> information from a furnisher if the furnisher has proven to Experian that it can reliably report accurate information. Prior to accepting credit information from a furnisher, Experian conducts an initial investigation and, as part of that investigation, makes a determination as to whether the furnisher is a reliable source of information. The initial investigation includes a site visit and physical inspection as well as an audit of the furnisher's data. Experian also requires data furnishers to execute a certification that they will only provide accurate credit information. Once a determination is made that the furnisher is a reliable source of credit information, Experian still employs additional reliability procedures, including subjecting data from the furnisher to quality control and compliance procedures, analyzing incoming data for unusual trends or aberrations, and periodically auditing the data provided by each furnisher. [The Sterling Defendants/DMI] ha[ve] satisfied Experian's requirements regarding furnisher reliability.

(Def. Experian, SUMF, ¶¶ 5-8, ECF No. 69-2) (internal citations omitted).

> Equifax maintains detailed procedures designed to assure the maximum possible accuracy of the information it reports to its subscribers regarding consumers and to correct errors that are brought to its attention. Equifax accepts credit information only from those sources of information that it has determined are reasonably reliable based upon Equifax's own investigation, the source's reputation in the community, and/or Equifax's longstanding business relationships with it. Equifax obtains consumer credit information from data furnishers, including [the Sterling Defendants/DMI], in a standard electronic format. Upon receipt of data, Equifax conducts a series of computerized quality checks before adding the data to its consumer database. These checks are designed to determine whether the data is in the proper format and whether the data as a whole deviates from expected norms (based on past experience with the particular source).

(Def. Equifax, SUMF, ¶¶ 8-12, ECF No. 64-2) (internal citations omitted).

In response to these detailed accounts of the CRA Defendants' various procedures and safeguards, Plaintiffs have not proffered sufficient evidence that would rebut the CRA Defendants' assertions with respect to the efficacy and robustness of their policies and procedures for furnishers operating within their ecosystem. Nor have Plaintiffs demonstrated that the CRA Defendants had a valid prior indication or reason to believe that the Sterling Defendants/DMI were unreliable or untrustworthy as furnishers. Put another way, this Court cannot unearth a genuine issue of material fact that would warrant a trial with respect to the reasonableness of the CRA Defendants' procedures for ensuring maximum possible accuracy of the information included in Plaintiffs'

11

consumer credit reports (specifically as it relates to the Sterling mortgage). Though normally a question for the jury, this evidential record compels this Court to conclude—as a matter of law—that it is "beyond question" that the CRA Defendants have implemented reasonable procedures for its furnishers (including the Sterling Defendants/DMI), and that the costs of requiring the CRA Defendants to go beyond the original source of the information (even if the source later turned out to be inaccurate) still outweigh the benefit of imposing such a requirement on the CRA Defendants—especially without any credible indication that the CRA Defendants had reason to be concerned about the Sterling Defendants/DMI as furnishers. Stated differently, Plaintiffs have not demonstrated that a genuine issue of material fact exists with respect to the reasonableness of the CRA Defendants' procedures to ensure the maximum possible accuracy of the information it received from the Sterling Defendants/DMI—thereby warranting dismissal of Plaintiffs' § 1681e(b) claim and the granting of the CRA Defendants' motion for summary judgment.

      c. **CRA Defendants: 15 U.S.C. § 1681i (Reasonable Re-Investigation)**

As noted above, Plaintiffs allege two claims against the CRA Defendants. In this section, the focus will turn to Plaintiffs' second and final assertion that the CRA Defendants did not reasonably re-investigate the alleged inaccurate information that had been included in Plaintiffs' consumer credit reports and also did not properly or timely modify the alleged inaccuracies within the reports. The FCRA notes, in relevant part, that:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly…of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A). As the Third Circuit instructs, § 1681i demands "that the '*consumer reporting agency shall* within a reasonable period of time reinvestigate' and 'promptly delete' inaccurate or unverifiable information." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 224 (3d Cir. 1997) (emphasis in original) (quoting *Stevenson v. TRW Inc.*, 987 F.2d 288, 293 (5th Cir. 1993)). After all, "[a] credit reporting agency that has been notified of potentially inaccurate information in a consumer's credit report is in a very different position than one who has no such notice…. When a credit reporting agency receives such notice, it can target its resources in a more efficient manner and conduct a more thorough investigation." *Id.* Put another way, "the plain language of the statute places the burden of reinvestigation on the consumer reporting agency." *Id.* at 225. Finally, "it is for 'the trier of fact [to] weigh the[se] factors in deciding whether [the defendant] violated the provisions of section 1681i.'" *Id.* at 225–26 (quoting *Henson v. CSC Credit Servs.*, 29 F.3d 280, 287 (7th Cir. 1994)).

Here, it is initially worth noting that only Defendant Trans Union concedes to receiving a formally filed dispute from Plaintiff Philip C. Pulley (but not from Plaintiff Devra K. Pulley); Defendants Experian and Equifax have continued to maintain that their records indicate that they never received a disputed claim from Plaintiffs. (Def. Trans Union, SUMF, ¶ 58, ECF No. 70-2; Def. Experian, SUMF, ¶¶ 25-27, ECF No. 69-2; Def. Equifax, SUMF, ¶¶ 77-80, ECF No. 64-2.) Given that the filing of a disputed inaccuracy with the credit reporting agency is a prerequisite to a § 1681i claim, Defendants Experian and Equifax argue that this fact, alone, should preclude them from liability. However, since Defendant Experian still opted to correct Plaintiffs' credit reports, this Court will analyze Defendant Experian's re-investigation (in conjunction with its analysis of Defendant Trans Union's re-investigation). Additionally, Defendant Equifax also argues that Plaintiffs' § 1681i claim fails because Defendant Equifax never reported a late or delinquent

13

payment on Plaintiffs' respective consumer credit report—thereby absolving Defendant Equifax of any liability under § 1681i. (Def. Equifax, SUMF, ¶ 40, ECF No. 64-2.)  This Court agrees. Upon review of the evidential record, Plaintiffs do not proffer sufficient evidence rebutting Defendant Equifax's claim that Defendant Equifax ever even posted a late or delinquent payment on Plaintiffs' respective credit report (outside of Plaintiff Philip C. Pulley's seemingly speculative belief that Defendant Equifax did post a late payment).  This fact, alone, proves fatal for Plaintiffs' § 1681i claim against Defendant Equifax. *See Bibbs v. Trans Union LLC*, 43 F.4th 331, 344 (3d Cir. 2022) ("We therefore join 'the weight of authority in other circuits[,]' which indicates that, 'without a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail.'") (quoting *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008)).

Turning to the re-investigation done by Defendant Trans Union and—to a certain extent—Defendant Experian, this Court will briefly recount the purported timeline and sequence of events. As previously noted, on August 12, 2020, the Sterling Defendants received Plaintiffs' dispute from Defendant Trans Union regarding the accuracy of the Sterling mortgage information provided to the credit reporting agency. (Sterling Defs., SUMF, ¶ 18, ECF No. 61-1.)  On September 2, 2020, the Sterling Defendants/DMI uploaded their response to the e-OSCAR system—which automatically sent copies to the CRA Defendants. (Sterling Defs. Reply in Supp. of Mot. for Summ. J., p. 11 n.1, ECF No. 89.)  In their response, the Sterling Defendants/DMI "modified the reporting on Plaintiffs' [Sterling] Loan account in a way that eliminated the past due amount of $16,968 [*i.e.,* the three months of payments that were in forbearance] by changing that amount to zero, and deleting the delinquency notation for the May 2020 payment so that the report no longer reflected any delinquency and, instead, showed the loan to be current. In addition, DMI's modified reporting showed that the loan was 'paying as agreed.'" (Sterling Defs. Mot. for Summ. J, pp. 9-

10, ECF No. 61-2; *see also* Sterling Defs., SUMF, ¶ 21, ECF No. 61-1.)  Defendants Trans Union and Experian have both independently confirmed receiving this information from the Sterling Defendants/DMI on September 2, 2020 and updating Plaintiffs' respective consumer credit reports to reflect the change as of September 3, 2020. (Def. Trans Union, SUMF, ¶¶ 13-14, ECF No. 70-2; Def. Experian, SUMF, ¶ 28, ECF No. 69-2.)  As previously discussed, Defendant Experian had no need or reason to update its reporting—as it had never noted a late or delinquent payment on Plaintiffs' Experian credit reports.

Though the reasonableness of the CRA Defendants' re-investigation of the alleged inaccurate information that had been included in Plaintiffs' consumer credit reports would typically be left to the jury, this Court concludes that there is no genuine issue of material fact for a jury to consider for two reasons.  First, it is worth noting that Defendants Trans Union and Experian updated Plaintiffs' consumer credit reports after receiving a notification through the Automated Consumer Dispute Verification ("ACDV") process. (Sterling Defs. Mem. of Law. in Supp. of Mot. for Summ. J., p. 9, ECF No. 61-2.)  This is significant because the United States District Courts for the District of Minnesota and the Northern District of Illinois have both persuasively instructed how district courts across the country have held that the ACDV process is an adequate and reasonable method of reinvestigation by consumer reporting agencies. *See Schmitt v. Chase Manhattan Bank, N.A.*, No. 03-3295 ADM/AJB, 2005 WL 2030483, at *3 (D. Minn. Aug. 23, 2005) ("Both Trans Union and CSC employ the Automated Consumer Dispute Verification ("ACDV") process, which has been held to be an adequate method of reinvestigation.") (internal citation omitted); *see also Lee v. Experian Info. Sols.*, No. 02 C 8424, 2003 WL 22287351, at *6 (N.D. Ill. Oct. 2, 2003) ("Quite understandably in light of the staggering amount of credit that fuels our economy and the enormous burden (and hence cost) that a general

15

requirement of more detailed follow-up procedures would impose on the system, the [Consumer Dispute Verification] procedure alone is accepted by courts as an adequate method both for assuring accuracy and for reinvestigation.").

Second, and in addition to the persuasive guidance from these aforementioned district courts, Plaintiff Devra K. Pulley concedes that she never contacted Trans Union (or seemingly any of the other CRA Defendants)—*see* William M. Huse Decl., Ex. C, Excerpts of Devra Pulley Deposition (February 9, 2022), p. 113 at 17:8-17:11, ECF No. 72)—which would preclude her from mounting a § 1681i claim as the completeness or accuracy of a consumer credit report has to first be disputed by the consumer before the CRA Defendants would have even been required to investigate her claim. Similarly, Plaintiff Philip C. Pulley seemingly summarily dismisses his § 1681i re-investigation claim (and likely even his § 1681e(b) claim) when he concedes the following in one of his depositions:

> **Q. Does this appear to be the [Sterling] account that you disputed as part of your August 2020 letter to TransUnion?**
> A. It appears to be
>
> **Q. Okay.**
> A. But this is also dated -- can you go back up to the beginning again where the date was?
>
> **Q. Well, it's at the top of the page on the left, it says Date Issued: 9/30/2020.**
> A. Okay. Thank you.
>
> **Q. Okay. Based on your review of this, does it appear that TransUnion has removed any evidence of any late payment or nonpayment on this Sterling Bank account?**
> A. Yes, they corrected the erroneous reporting.
>
> **Q. Okay. Is that what you wanted them to do?**
> A. The answer is yes, but the harm had already been done, the damage had already been done.
>
> **Q. Okay. How did you feel when you saw these results and saw that TransUnion in response to your written dispute had corrected the information?**
> A. It's great, but the harm had already been done.

(Sterling Defs., SUMF, Ex. B, Pulley Deposition Excerpt (February 9, 2022), p. 30 at 32:22-33:23, ECF No. 61-1.)  As a point of clarification and for the avoidance of doubt or confusion, it is important to note that Plaintiff Philip C. Pulley seems to mistakenly refer to the "Date Issued" as "9/30/2020"; however, a review of the Trans Union Investigation Report reveals that the "Date Issued" is actually listed as "09/03/2020" throughout.  (Pls. Statement of Exhibits, Ex. A, Trans Union Investigation Report, ECF No. 66-1.)

As this deposition excerpt demonstrates, Plaintiff Philip C. Pulley appears to be misinterpreting the law and the scope of liability under the FCRA and § 1681i more specifically.  If Plaintiff Philip C. Pulley concedes that the erroneous reporting had been corrected by September 3, 2020, such an admission comports with the timeline of the Sterling Defendants and Defendants Trans Union and Experian—each of whom asserted that the alleged inaccuracies with respect to Plaintiffs' consumer credit reports had been resolved by September 3, 2020.  This truth would suggest that the Sterling Defendants conducted a reasonable, proper, and timely investigation, informed the CRA Defendants via the e-OSCAR system on September 2, 2020, and that Defendants Trans Union and Experian then modified Plaintiffs' consumer credit reports to resolve his issue by September 3, 2020—which is all in line with what Plaintiff Philip C. Pulley wanted the CRA Defendants to do when he first filed his dispute.  While Plaintiff Philip C. Pulley can claim that "the harm had already been done," the timing of his dispute and the subsequent investigations and modifications by the Sterling Defendants and Defendants Trans Union and Experian—all of which seemingly occurred within thirty (30) days—actually comported with what the FCRA demands and requires of furnishers and consumer reporting agencies—thereby warranting dismissal of Plaintiffs' § 1681i claim and the granting of the CRA Defendants' motion for summary judgment.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment (ECF Nos. 61, 64, 69-70) will be granted, and Plaintiffs' Partial Motion for Summary Judgment (ECF No. 65) will be denied.

An appropriate Order follows.

**IT IS SO ORDERED.**

                                                   **BY THE COURT:**

                                                   */s/ John Milton Younge*
                                                 **JUDGE JOHN MILTON YOUNGE**